UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO

| | |
|---|---|
| TOM RETZLAFF<br>　　Plaintiff,<br><br>v.<br><br>LYNDA YVONNE DE LA VINA,<br>DIANE BAKER WALZ, KYLE<br>MERLETTE SNYDER, KATHERINE<br>ANNE POPE,<br>　　Defendants. | §<br>§<br>§<br>§<br>§   NO: 5:08-CV-00170-OLG<br>§<br>§<br>§<br>§<br>§<br>§ |

## **DEFENDANTS' MOTION AND BRIEF FOR SUMMARY JUDGMENT**

TO THE HONORABLE U.S. DISTRICT JUDGE ORLANDO L. GARCIA:

Defendants Lynda de la Viña, Diane Walz, Kyle Snyder, and Katherine Pope (the "Defendants"), named in their personal capacities by Plaintiff Tom Retzlaff, move for summary judgment and to dismiss with prejudice *Plaintiffs' Original Petition and Requests for Disclosure*, filed by Thomas Retzlaff. Defendants are administrators at the University of Texas at San Antonio (UTSA); Plaintiff Retzlaff is a former undergraduate and then graduate student in the UTSA College of Business Master's of Business Administration (MBA) program before his disciplinary discharge in 2008.

The facts behind Plaintiff Retzlaff's expulsion from UTSA are straightforward: in November 2007, a female foreign national from China enrolled at UTSA complained directly to school administrator and campus police that Retzlaff was harassing her. Unlike earlier complaints against Retzlaff on campus, a police captain this time assessed Retzlaff's behavior as maybe amounting to criminal conduct and directed Retzlaff to leave the complainant alone—not to contact her. Retzlaff disobeyed.

Meanwhile, school administration's awareness of the criminal complaint to campus police

caused them to revisit Retzlaff's student file, including his application for admission. The Dean of the UTSA College of Business (Lynda de la Viña) and the its Associate Dean of Graduate Studies and Research (Diane Walz) uncovered startling public records about Retzlaff. Among other revelations, court opinions and other records showed that Retzlaff was in-fact doing an eight-year prison sentence beginning in 1998 when, according to written statements he submitted in support of his MBA admission application, he claimed to have been serving in "Afghanistan and later . . . two tours of duty in Iraq." And when in-fact Retzlaff won early-release from prison in 2004, Retzlaff claimed in his MBA admission application that he "medically retired" in 2004 from military service "[a]fter my third combat-related injury."

Retzlaff's conduct toward another student and the many material fabrications in his application for admission to the MBA program violated the student code. After a hearing process that Retzlaff requested and then sought to avoid, his wrongdoing ultimately caused a hearing officer to reach an ordinary, appropriate decision to permanently discharge him from UTSA.

The present lawsuit and its companion accusations against Defendants should be dismissed, in that: (1) no defamation occurred (and an e-mail distribution and alleged verbal statement challenged by Retzlaff was not a declaration of fact, defaming, negligent or false; the email is in any case protected by qualified privilege and official immunity); (2) UTSA administrators' source of Retzlaff's criminal background are public records, not "confidential criminal history" from "law enforcement sources;" (3) Retzlaff lacks the required showings to advance his charge of "civil conspiracy" or violations of the U.S. Constitution (in response to which Defendants assert their qualified immunity); and (4) the alleged "malice" is not a cause of action, which in any case is absent from the record evidence, except for Retzlaff's demonstrated conduct and sentiment toward Defendants and others. All claims in *Plaintiffs' Original Petition and Requests for Disclosure*

should be dismissed with prejudice.

## PROCEDURAL BACKGROUND AND RELEVANT FACTS

1. By *Plaintiffs' Original Petition and Requests for Disclosure* filed in the Bexar County Court at Law No. 10 in February 2008, Plaintiff named four women, all UTSA officials, as Defendants. They are (with title at the relevant times): Lynda de la Viña (Dean, College of Business); Diane Walz (Associate Dean for Graduate Studies and Research); Kyle Snyder (Director, Liu's Family Foundation US-China Business Education Initiative); and, Katherine Pope (Director of Graduate Student Services). Ex. E ¶¶ 2, 6. In light of Retzlaff claims under the U.S. Constitution, Defendants removed Retzlaff's action to this Court. R. Item 1.

2. By Order granted in November 2008, Defendants now timely move for summary judgment asserting judgment. R. Item 15.2. Defense counsel has required time up to and including this date due in part to unanticipated emergency settings and duties caused by a lawsuit filed earlier this month. *Doe, et al, v. DPS, et al.*, No. A-09-CA-037-LY (W.D. Tex.).

**Retzlaff's Background**

**A.   General background & criminal history before enrolling at UTSA (2004)**

3. Thomas Retzlaff is 42 years old (born 3-14-66 in the United States) and is a white male. Ex. H at 92, 200-01. He has a long criminal history, having served jail and prison sentences most recently in the custody of the Texas Department of Criminal Justice from February 1998 to May 2004. Ex. D ¶ 6. According to a court opinion, this confinement resulted from an eight-year sentence due to his conviction for the "Possession of a Weapon in a Prohibited Place." *Ex parte Retzlaff*, 135 S.W.3d 45, 47 (Tex. Crim. App. 2004). Retzlaff won early release by successfully challenging the Board's parole notification procedures. *Id*.

4. Numerous other publicly-available court opinions[1] record Retzlaff's criminal history and the various penalties that courts have assessed him. They include:

- *Ex Parte Retzlaff*, No. 03-05-00277-CR (Texas Court of Appeals, Third Dist., Austin, Tex., Dec. 5, 2006) (mem. op.);
- *Ex parte Retzlaff*, 2007 WL 1451990 (Tex.App.-Austin 2007);
- *Retzlaff v. McDonald, Hollas, Jr., and D. Retzlaff*, No. 03-03-00319-CV; No. 03-03-00320-CV (Texas Court of Appeals, Third Dist., Austin, Tex., March 18, 2004) (mem. op.); and
- *Thomas C. Retzlaff v. Bell County District Attorney's Office*, No. 03-98-00581-CV (Texas Court of Appeals, Third Dist., Austin, Tex., Oct. 21, 1999) (mem. op.).

5. Among other information, an opinion here records Retzlaff's failed attempt to expunge records and files in "three felony causes against him numbered: (1) 47,563, sexual assault; (2) 47,206, illegal knife on school premises; and (3) 47,176, burglary of a habitation." Retzlaff v. Bell County District Attorney's Office, No. 03-98-00581-CV. Another opinion offers this troubling insight, which also suggest perjury:

> Although we will not consider it for the purposes of this appeal, we note that our opinion affirming the judgment terminating Retzlaff's parental rights recites facts inconsistent with the testimony presented at the hearing on damages. *See Retzlaff v. Texas Dept. of Protective & Regulatory Services*, No. 03-98-00201-CV, 1999 Tex. App. LEXIS 5547 (Austin July 29, 1999, pet. denied). In discussing the sufficiency of the evidence to support the termination we summarized the evidence: Retzlaff testified that he left the children alone in the house, that he kept a loaded gun in the house, that he kept pornographic materials in areas of the house that were accessible to the children, and that he participated in sexual acts near the children on more than one occasion. Denise Retzlaff testified that Retzlaff began leaving the children alone in the house when the eldest was three weeks old, that he kept pornographic magazines under the master bed and on the night stand, that he masturbated with the aid of pornographic materials, and that she discovered one of the children imitating Retzlaff's behavior in front of the pornographic materials at the age of six. Both children told Dr. Pugliese, the Department's expert, that they witnessed Retzlaff masturbating and/or watching pornographic movies on the television. One child

---

[1] Through a Google "Thomas Retzlaff" search, these opinions are accessible at:
http://www.3rdcoa.courts.state.tx.us/opinions/HTMLOpinion.asp?OpinionID=15455
http://www.3rdcoa.courts.state.tx.us/opinions/htmlopinion.asp?OpinionId=12633
http://www.3rdcoa.courts.state.tx.us/opinions/htmlopinion.asp?OpinionId=7948

stated that he occasionally looked through some of the pornographic magazines and watched X-rated movies from his bedroom while Retzlaff was masturbating. He also told a school counselor that Retzlaff would touch his sister's older friends in their private places. Both children expressed dislike towards Retzlaff, and one told Dr. Pugliese that she felt uncomfortable around Retzlaff and had no interest in living with him.

*Retzlaff v. McDonald, Hollas, Jr., and D. Retzlaff*, No. 03-03-00319-CV; No. 03-03-00320-CV.

6. At deposition, Retzlaff admitted to some of the offenses discoverable through these and other court opinions. Ex. H at 71-88. And he falsely testified that the sexual assault charge "is pending expungement" and that the burglary "is "also part of the expungement" and "it's part of the expungement." Compare supra at ¶ 5 and Ex. H at 78, 82.

**B.   UTSA enrollment, false application, and MBA admission**

7. Upon his early-release from prison in 2004, Retzlaff enrolled as an undergraduate student at UTSA in the fall semester. Ex. H at 89-90, 110-111. By transferring credits from several other colleges and by completing courses at UTSA, Retzlaff finished an undergraduate degree at UTSA. His major was criminal justice. Ex. A Attach. 2.[2]

8. By application received by the school in May 2006, Retzlaff sought admission to the UTSA College of Business MBA program. Ex. A Attach. 1. There, Retzlaff falsely indicated "2 years" in response to the form question: "How long have you resided in Texas?" Ex. A Attach. 1 at Part 4; and see supra at ¶ 3 (he was imprisoned in Texas between 1998 and 2004, whereupon he enrolled as a UTSA undergraduate; and records show that Retzlaff committed crimes in Texas before 1998).

---

[2] The circumstances of Retlzaff's 2006 admission as an undergraduate student are not part of the record evidence and were not a material part of the UTSA College of Business's later scrutiny of the student and his admission. Rather, the College referred for action Retzlaff's misrepresentations in his application for admission to the MBA program.

9. Additionally, Retzlaff submitted personal statements in support of his application. They included his March 1, 2007, third-person assertions that:

Mr. Retzlaff took part in Operation Just Cause . . . and Desert Shield/Desert Storm (1990-1991) . . was assigned to Basnia and Herzegovina [and] to the Army Criminal Investigations Division as a Special Agent, responsible for the invetsigation and prosecution of serious felonise and national security / counter-intelligence matters. . . . is a graduate of the U.S. Army Warrant Staff Court.

Additionally, Retzlaff said about himself that:

[a]fter 9/11, his Army reserve unit was activated and he was sent first to Afghanistan and later served two tours of duty in Iraq. He also spent some time at Camp X-Ray / Camp Delta . . . . He then returned to Iraq. After his third combat-related injury, Mr. Retzlaff was medically retired in 2004 as a Chief Warrant Officer. Mr. Retzlaff continues to work in law enforcement at the state and federal level [and] has Master Peac Officer certification and is a member of the National District Attorney's Association, Texas District & County Attorney's Association . . .

Ex. A Attach. 3. In a revised version of this submission in support of this application, this time written in first-person and delivered on March 20, Retzlaff still stressed that "After my third combat-related injury, I was medically retired in 2004 as a Chief Warrant Officer." Ex. Attach. 3.

10. Retzlaff's academic credentials were sub-standard, including his performance on the Graduate Management Admission Test. Ex. A ¶ 5. On the strength of Retzlaff's purported service background as asserted in his personal statement, however, the College admitted him to its MBA program. Ex. A ¶ 5; Ex. A Attach. 6. By letter dated in April 2007, Dr. Diane Walz offered him conditional admission. Ex. A Attach. 5.

C. **Complaint to police against Retzlaff; his referral to Office of Judicial Affairs**

11. By UTSA Police Department offense/incident report dated November 8, 2007, a Chinese student named Lan Zhu, or "Julie," (28), and Defendant Kyle Snyder filed a complaint against Retzlaff. Ex. D ¶¶ 3-4; Ex. D Attach. 1. Snyder testifies that Zhu:

came to about a problem with an MBA student names Thomas Retzlaff.  The young female student . . . stated that Mr. Retzlaff was harassing her in spite of her instructions that he leave her alone.  Julie's description of Mr. Retzlaff's actions and the fear and concern she showed me caused to offer the UTSA Police Department as an appropriate resource for her complaint.

Ex. C ¶ 3.[3]  Captain Dan Kiley of the UTSA Police Department investigated the complaint, directed Retzlaff not to contact Zhu.  Capt. Kiley ultimately concluded and reported that:

I have also been notified that Retzlaff had emailed . . . and phoned Zhu numerous times over this past weekend which is a direct violation of my orders to him not to have further contact with Zhu . . . harassment charges will be filed against him . . . I have every reason to believe he will continue his attempts to contact Zhu or other members of the Liu Program in order to make contact with Zhu.

Ex. D Attach. 1 at p. 2 of 2.  (Kiley reports several earlier complaints of a non-criminal nature made by UTSA students or teachers against Retzlaff, dating to June 2005.  Ex. D

12. The occurrence caused administrators at the College of Business, including college dean Lynda de la Viña and Diane Walz, to examine Retzlaff's background on campus, including his application.  Ex. E ¶ 4.  De la Viña and Walz found court opinions on the internet that were inconsistent with the statements he made in support of his application.  Ex. E ¶¶ 4, 7; Ex. E Attach. 1 (court opinion).  The officials referred the matter to the UTSA Office of Judicial Affairs.  Ex. F ¶ 3.

13. Additionally, by mail dated November 20, 2007, de la Viña relayed a report made to her from another business school administrator.  The report, made by Julie (the Chinese student), was that "Mr. Rezlaff carried a gun in his glove box which she had seen."  De la Viña added that "I do not know if this is accurate but thought I should report to you all."  She distributed the

---

[3] Snyder is and was Director of Liu's Family Foundation U.S.-China Business Initiative, a program that enrolls Chinese students in temporary period of student at the UTSA College of Business.  Snyder helps orient these visiting students and serves as a resource to address their questions and concerns.  Ex. C ¶ 2.

email to eight people, all of whom were UTSA administrators or UTSA law enforcement personnel by that time familiar with Retzlaff. Ex. E ¶ 6; Ex. E Attach. 1. De la Viña articulates her purpose for her actions, including that "[a]s a member of administration, I feel a responsibility to help ensure the safety of our students and employees while on campus [and that] in light of the responsibility I feel and felt to UTS students and employees, I firmly believed it was necessary to make a few fellow administrators and campus law enforcement aware of my findings." Ex. E ¶¶ 4, 7. Walz explains why she concurs with de la Viña's judgment on this topic. Ex. A ¶ 9.

### D.   Process and expulsion

14. Todd Wollenzier, assistant director of the UTSA Office of Judicial Affairs, received the business school's complaint that Retzlaff violated the UTSA Student Code of Conduct (the Code), and he investigated. Ex. F ¶¶ 3-4. After research, Wollenzier concluded that Retzlaff had in-fact falsified aspects of his application for admission to the MBA program and committed other important misconduct. In particular, Retzlaff had lied in stating that he was in Texas only 2-years, lied in his personal statement, disobeyed Capt. Kiley's direction to "leave-alone a female student who had complained" against Retzlaff. Ex. F ¶ 4.

15. Retzlaff requested an administrative hearing of the charges before a hearing officer, which UTSA arranged. Ex. F ¶ 4; Ex. H at 113. Wollenzier also wrote to Retzlaff, providing ample notice of the violations of the Code and the evidence that proved the violations. Ex. F ¶ 5; and see Ex. H (Attach. C-E). Retzlaff objected to the first appointed hearing officer, and a different official (Daniel Escobar) served instead. Ex. Ex. H 113-14. Retzlaff also delayed the hearing several times, as was documented by Wollenzier. Ex. H Attach. D at p. 7. In response to a hearing setting for April 2008, Retzlaff filed a civil action and

        approached the Bexar County Court at Law, initially ex parte, to enjoin the setting. The Court contacted undersigned counsel and denied Retzlaff's request. Ex. H at 120-21.

16. By hearing on April 18, which continued on April 21, 2008, hearing officer Escobar heard evidence and argument. Ex. G Attach. 1. Retzlaff and his attorney (Louis Martinez) were present. Ex. G Attach. 1 at 3. By Decision dated in may 2008, Escobar concluded that Retzlaff violated Code provisions. Respecting Retzlaff's decision to contact Zhu over Capt. Kiley's direction not to: "It is clear to me, that Mr. Retzlaff did in fact violate an order or instruction give to him by a University Official." Ex. G Attach. 1 at 5. Escobar also concluded that Retzlaff "lied about his past" in his MBA application and that "he did this knowingly and with the intent to gain unfair advantage in his application to the COB [College of Business] Graduate School." Ex. G Attach 1 at 5. Escobar concluded that Retzlaff's penalty was "permanent expulsion for the University. Ex. G Attach 1 at 6.

17. Retzlaff agreed at his deposition that he had admitted during his disciplinary hearing that he had misrepresented facts in his personal statement in application for the MBA program. Ex. H at 132.

18. Retzlaff says he considered appealing the Decision. Gage Paine, vice president of student affairs, extended his 14-day deadline to notice his appeal decision (the merits of the appeal would be due even later). Ex. G Attach. 2. Retzlaff still failed to timely notice any appeal, thus ending the administrative process. Ex. G Attachs. 3-4.

        **E.    Retzlaff's lawsuits and claims**

19. Defendants have documented Retzlaff's history of lawsuits against UTSA or its officials, which began in November 2007. R. Item 3 at 2-3. More recently, in August 2008, the Bexar County Court at Law denied Retzlaff's request to enjoin his disciplinary discharge from

UTSA.  Ex. L.  And by *Order Declaring Tom Retzlaff A Vexatious Litigant* dated in October 2008, Retzlaff is restricted in his litigation practices, and now owes money to those defendants.  Ex. K.[4]

20. In the present case, Retzlaff's deposition testimony and other conduct there was remarkable for his:  refusal to provide basic information; invocation of a "right to remain silent" on at least three occasions, refusal to authorize a medical records release, and off-record remarks that he "thought about killing people" in connection with the litigation:

   a. Retzlaff refused to give his residential address.   Ex. H at 28.

   b. Retzlaff invoked his "right to remain silent."  Ex. H at 60 (re. the location of his ex-wife); Ex. H at 95-97 (re. his alleged military service); and Ex. H at 104 (re. contact with Lan Zhu, or "Julie").

   c. Retzlaff refused to authorize a medical authorization, despite his claim for "mental anguish" and testimony that he sees a psychologist or psychiatrist.  Ex. H at 61-62, 65-68, 109-110; Ex. H Attach. B.

   d. Retzlaff threatens during a break but in the presence of witnesses that the litigation makes him think "about killing people."  Ex. I; Ex. J.

21. Retzlaff nevertheless presses claims against Defendants, contending that they defamed him, among other theories.  More precisely, Retzlaff believes that Defendant de la Vina's email "saying I had ca gun on campus or brought a gun on campus" was defamation.  Ex. H at 135.  He alleges no other defamation against her.  Ex. H at 136, 148-49.  Respecting Snyder, he alleges that she called him "a dangerous person" in front of Lan Zhu's Chinese roommates, and that he heard this only from these students, who have since left the country.  Ex. H at 142, 144.  Without any evidence, Retzlaff sues Defendant Katherine Pope for allegedly distributing the email that de la Viña directed to Pope and other administrators, about the

---

[4] Defendants have previously also provided evidence of the improper purposes that drives Retzlaff's civil litigation.  R. Item 16 at ¶ 2.

possibility that Retzlaff carried a gun. Ex. H at 150-51.

22. Retzlaff also believes that Defendants violated a state privacy statute because "those guys got the UTSA Police Department to give them access to my criminal history information." Ex. H at 174. Capt. Kiley testifies that he did not release the product of his criminal database searches to UTSA administrators; much (or all) of Retzlaff's criminal record is public record. which administrators discovered themselves. Ex. D ¶ 6; and see supra at ¶¶ 4-5.

23. Respecting questions about his civil conspiracy claims against Defendants, Retzlaff summarizes that " . . . it's a little bit early yet to – to really go into these. Discovery is just starting in this case, and my ideas might change as – as I learn more about what happened." Ex. H at 177.

24. Retzlaff's asserts violations protections with the First (free speech and association), Fifth (due process) and Fourteenth (equal protection and due process) Amendments. He specifically alleges that Defendant de la Viña unlawfully retaliated against him (by starting "this ball rolling to get me kicked out of school" Ex. H at 180) for speaking with the FBI and for associating with "the Chinese girl [Julie]." Ex. H at 185, 189. Defendants Walz and Snyder are sued essentially for the "same things." Ex. H at 192-94. Defendant Pope allegedly unlawfully tried to obstruct Retzlaff form registering for classes in the spring semester of 2008. Ex. H at 185, 194. But Retzlaff admits that "I was allowed to go ahead and register" for the semester. Ex. H at 185.

25. Retzlaff contends that his due process rights were violated because "similarly situated students weren't treated the same." Ex. H at 197. And he asserts the "class of one" theory in support of his equal protection claim, in light of his majority racial background and national origin (United States). Ex. H at 200-01.

**AUTHORITIES AND ARGUMENT FOR RELIEF**

I.   **Defendant de la Viña's November 2007 e-mail advisory about a report she had received is not defamation in that it lacks required elements to qualify. De la Viña's action to send the e-mail is in any case protected by qualified privilege and subject to official immunity. And Retzlaff's defamation claim against Snyder likewise fails.**

Plaintiff claims that de la Viña November 2007 e-mail advisory about a report she had received, directed to six UTSA administrators and two UTSA law enforcement officers, defamed him. The e-mail, which merely relayed a report that Retzlaff carried a gun in his car and then cautioned that it may not be accurate, see supra at ¶14 ¶21, does not amount to defamation.

> To prove a cause of action for defamation, a plaintiff must prove that (1) the defendant published a statement of fact, (2) the statement was defamatory, (3) the statement was false, (4) the defendant acted negligently in publishing the false and defamatory statement, and (5) the plaintiff suffered damages as a result. *See Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 382 (Tex.App.-Houston [1 Dist.] 2005, no pet.) (*citing WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998)); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 73.001 (Vernon 2005).

*Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex.App.-Tyler, 2008). True statements cannot form the basis of a defamation complaint. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Whether a publication is capable of being defamatory is initially a question of law to be determined by the court. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex.2000).

Here, respecting the e-mail, Retzlaff lacks each of the basic elements for defamation. Moreover, qualified privilege and official immunity should shield her from suit.

> Texas recognizes a qualified privilege for "statements that occur under circumstances wherein any one of several persons having a common interest in a particular subject matter may reasonably believe that facts exist that another, sharing that common interest, is entitled to know." [ftnote omitted] Hence, "a communication made on a subject matter in which the person making it has an interest is privileged if made to persons having a corresponding interest or duty."

*Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). When a school communicated factual

understandings about a student to outsiders, much less internally, the Fifth Circuit extended the privilege because "[w]e are convinced that Texas courts would recognize a qualified privilege in these circumstances, since they routinely recognize the privilege in the analogous circumstance of an employer providing a reference on a former employee to a prospective employer."

Additionally, state official immunity applies to de la Viña's e-mail because it was a discretionary duty within the scope of her authority and occurred was performed in good faith. See supra at ¶ 13. Official immunity is an affirmative defense that protects a government employee from liability in a lawsuit when the employee (1) performs discretionary duties (2) within the scope of the employee's authority (3) provided the employee acted in good faith. *University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). State officials perform discretionary acts when their actions are those which involve "personal deliberation, decision, and judgment." *Eastland County Co-op Dispatch v. Poyner*, 64 S.W.3d 182, 192 (Tex. App.—Eastland 2001, *pet. denied*). Likewise, state officials act within the scope of their authority if they are discharging duties generally assigned to them. *Id*. (citing *Chambers*, 883 SW.2d at 658). Finally, Texas courts measure "good faith" by an objective legal standard without regard to the official's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). Thus, a state official acts in good faith if a reasonably prudent official, under the same or similar circumstances, could have believed that his actions were appropriate. *Chambers*, 883 S.W.2d at 656.

With no supporting evidence, Retzlaff accuses Pope and possibly Walz of defamation for allegedly forwarding de la Viña's e-mail to others. See supra ¶ 21. Retzlaff's claim against them collapse because the underlying e-mail lacks the required elements. See supra. Moreover, "[d]efamation claims must specifically state the time and place of the publication." *Jackson v. Dallas Indep. Sch. Dist.*, No. CIV. A. 398-CV-1079, 1998 WL 386158, at *5 (N.D.Tex.1998), *aff'd*, 232 F.3d 210 (5th Cir.2000); *Garrett v. Celanese Corp.*, No. 3:02-CV-1485-K, 2003 WL 22234917, at *4 (N.D.Tex.2003), *aff'd*, 102 Fed. Appx. 387 (2004). Retzlaff claim lacks this required showing or evidence to support it.

The defamatory statement that Retzlaff attributes solely to Snyder—that Retzlaff is a "dangerous person"—likewise lacks elements three, four, and five. *Zimmer*, 257 S.W.3d at 509. Snyder denies describing Retzlaff in this fashion. Ex. C at ¶ 5. But the the alleged characterization of Retzlaff seems true-enough, and apt, in light of his criminal history and ongoing behavior, including during deposition. See supra at ¶¶ 4-5, ¶ 11, ¶ 20 (d). Nor does Retzlaff "specifically state the time and place of the publication." *Jackson*, 1998 WL 386158, at *5, *aff'd*, 232 F.3d 210; *Garrett*, 2003 WL 22234917, at *4 (N.D.Tex.2003), *aff'd*, 102 Fed. Appx. 387 (2004). Retzlaff does not carry this burden either. Finally, like Defendant de la Viña, Snyder asserts her official immunity to Retzlaff's defamation claim against her. Even assuming Snyder uttered the statement she is accused of, official immunity should apply in light of Retzlaff's background facts and his threatening behavior as a student on campus.

Retzlaff's defamation claims should each be dismissed with prejudice.

**II.    For this civil lawsuit, Retzlaff wrongly invokes a government code provision that only creates criminal penalties for improperly using or disclosing certain criminal history record information. Retzlaff in any case lacks evidence for his claim; his criminal history was and is available to Defendants and others through court opinions on the world wide web.**

>   Tᴇx. Gᴏᴠ. Cᴏᴅᴇ § 411.085 states that:
>
>   (a)  A person commits an offense if the person knowingly or intentionally:
>   (1)  obtains criminal history record information in an unauthorized manner, uses the information for an unauthorized purpose, or discloses the information to a person who is not entitled to the information;
>   (2)  provides a person with a copy of the person's criminal history record information obtained from the department; or
>   (3)  violates a rule of the department adopted under this subchapter.

The statute creates criminal penalties in subparts (b) – (d). No part of the statute authorizes civil remedies for an alleged violation of this law.

Regardless, perhaps operating under a false impression that his criminal history is accessible only through restricted law enforcement databases, Retzlaff in this claim assumes that Defendants' knowledge about his background came only through these sources. It has been demonstrated that this is not true. See supra at ¶¶ 4-5. Indeed, as early as November 2007, Defendant de la Viña identified one public source (a court opinion) that proved one proper source of her knowledge. Ex. E Attach. 1. Retzlaff's claim under the government code should be dismissed.

**III.  Retzlaff's "civil conspiracy" claims against Defendants are hollow.**

At deposition, Retzlaff could not articulate any civil conspiracy theory brought against Defendants. See supra ¶ 23. He lacks every one of required elements to advance this claim:

>   (1) two or more persons;
>   (2) an object to be accomplished;
>   (3) a meeting of the minds on the object or course of action;
>   (4) one or more unlawful, overt acts; and
>   (5) damages as a proximate result
>   We have consistently held that there cannot be a civil conspiracy to be negligent.

*Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Retzlaff's claim of civil conspiracy should be dismissed.

**IV.  The clearly-documented actions of administrators to uncover Retzlaff's application falsifications and expose his ongoing harassment of another student, to refer these as violations of the student Code, to process them through hearing, and to expel him from**

**school, do not violate any one of Retzlaff's constitutional rights.**

**Free Speech and Association.** Retzlaff provides no showing that any Defendant was motivated in her actions by speech that amounted to matter of public concern. In the employment context:

> A plaintiff must satisfy four elements to recover for a free speech retaliation claim: (1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions.

*Finch v. Fort Bend Independent School Dist.*, 333 F.3d 555, 563 (5th Cir. 2003). And "[i]f this test is passed, the burden shifts to Defendants to show that 'they would have come to the same conclusion in the absence of the protected conduct.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting, *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir.2001)).

The courts have applied the similar standards in non-employment cases. *Shinn on Behalf of Shinn v. College Station Independent School Dist.*, 96 F.3d 783, 786 (5th Cir. 1996). The record in this case shows that Retzlaff lacks any showing that Defendants were motivated in their conduct by Retzlaff's purported speech activity, which did not in any case address a matter of public concern. Moreover, the record is clear that Defendants would have come to their same conclusions in the even in the absence any protected speech. Respecting Retzlaff's associational claim, "[t]he only difference between the requirements for a retaliation claim predicated on free speech and one predicated on free association is that the latter 'is not subject to the threshold public concern requirement.'" *Breaux v. City of Garland*, 205 F.3d 150, 157 (internal citation omitted).

Retzlaff's First Amendment claims against Defendants should be dismissed with prejudice.

**Equal Protection.** Retzlaff essentially argues that he is a "class of one," in light of his majority race, national origin, and other immutable characteristics. Assuming that the U.S. Court

of Appeals for the Fifth Circuit applies this theory for alleged equal protection violations, Retzlaff fails to identify similarly-situated individuals who were treated differently. *See Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir.1999) ("Wheeler claims that he was individually singled out for unfair treatment–that he is a 'class of one.' Whether equal protection rights extend to such claims simply because the plaintiff claims 'discrimination' is unclear. . . Under federal law, the Equal Protection Clause essentially directs that all persons similarly situated be treated alike. [n. omitted.] Generally, to establish an equal protection claim the plaintiff must prove that similarly situated individuals were treated differently.").

**Due Process.**  The record shows that UTSA provided Retzlaff more than minimal amount of process required by the U.S. Constitution.

> If a public school dismisses a student for "disciplinary reasons," the student is entitled to "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.' " Bd. of Curators v. Horowitz, 435 U.S. 78, 86, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (finding that the procedural due process accorded had been more than sufficient and did not require a hearing for a student dismissed from medical school for academic cause) (quoting Goss v. Lopez, 419 U.S. 565, 584, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

*Senu-Oke v. Jackson State University*, 283 Fed.Appx. 236, 239 (5th Cir. 2008).  Here, UTSA provided Retlaff a two-day hearing process where his attorney was allowed to attend.  See supra ¶¶ 15-16.  Like his other constitutional claims against Defendants, Retzlaff fails to advance any due process claim that should survive summary judgment.

**V.    "Malice," alone, is not a recognized cause of action.**

Retzlaff wrongly pleads "malice" as a cause of action.  No law supports his assertion that this allegation, in itself, forms the basis for a legal claim.

**VI.     Qualified immunity applies to shield Defendants from liability.**

Defendants assert their qualified immunity to Retzlaff's federal constitutional claims. Denial of an state official's motion for summary judgment on qualified immunity means "First . . . that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2005).  Here, Defendants' conduct cannot be called objectively unreasonable in light of clearly established law about the Free Speech Clause, Equal Protection Clause, or Due Process Clause, as a matter of law.

In another current opinion, the Court elaborated that:

> Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability . . . As we recently noted, "[b]efore this court–or any court– can adjudicate the merits" of Plaintiffs' claims, they "must overcome the bar of qualified immunity." Once raised, a plaintiff has the burden to rebut the qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."

(citations omitted.) *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005).  Under the facts and evidence of this case, including Retzlaff's admissions and Defendants' exhaustive explanations for their actions, which are supported by records, this Court should dismiss all constitutional claims against them by application of immunity.

## CONCLUSION

For the foregoing reasons, Defendants ask this Court to dismiss all claims against Defendant with prejudice.

        Respectfully submitted,

        GREG ABBOT
        Attorney General of Texas

        C. ANDREW WEBER
        First Assistant Attorney General

        DAVID S. MORALES
        Deputy Attorney General for Litigation

        ROBERT B. O'KEEFE
        Chief, General Litigation Division

          /s/     Lars Hagen
        LARS HAGEN
        Texas Bar No. 24034470
        Assistant Attorney General
        General Litigation Division
        P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548
        (512) 463-2120 (Telephone)
        (512) 320-0667 (Facsimile)

        ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

     With the understanding that Plaintiff is now acting pro se and lacks e-notification of this filing, I hereby certify that a true and correct copy of the foregoing document and companion exhibits has been served U.S. Certified Mail on February 2, 2009, to the following:

| | |
|---|---|
| LOUIS D MARTINEZ | TOM RETZLAFF |
| 1004 S ST MARY'S STREET | PO BOX 92 |
| SAN ANTONIO TEXAS 78205 | SAN ANTONIO, TEXAS 78291 0092 |
| 210-222-8785 (office) | 210-317-9800 (office) |
| 210-223-1263 (Fax) | 210-521-9146 FAX |
| SBOT# 24037038 | |

          /s/     Lars Hagen
        LARS HAGEN
        Assistant Attorney General